**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **REGINA FLIPPIN, M.D.,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | 12 C 1996 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| **AURORA BANK, FSB, and** | ) | |
| **MORTGAGE CONTRACTING** | ) | |
| **SERVICES, INC., a/k/a MORTGAGE** | ) | |
| **CONTRACTING SERVICES, LLC,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued Aurora Bank and Mortgage Contracting Services, Inc. ("MCS") for, among other things, their alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Consumer Fraud Act and for trespass and intentional infliction of emotional distress. Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss these claims. For the reasons set forth below, the Court denies the motion.

### Facts

Plaintiff owns a house in Crete, Illinois that is mortgaged to Aurora. (Compl. ¶¶ 8, 11.) On December 6, 2011, Aurora filed suit against plaintiff in Illinois state court to foreclose the mortgage. (*Id.* ¶ 11.)

On January 25, 2012, MCS, at Aurora's direction, changed the locks on the house and "winterized" it by turning off the water supply and disconnecting the hot water heater. (*Id.* ¶¶ 13,

16.) MCS also took plaintiff's jewelry, electronic equipment and power tools from the house. (*Id.* 17.)

When plaintiff discovered what had happened on January 28, 2012, she told Aurora she still lived in the house and asked it to change the locks back, return her property, and reverse the winterization process. (*Id.* ¶¶ 18-20.) When Aurora refused, plaintiff hired someone to replace the locks and reverse the winterization. (*Id.* ¶¶ 20-26.)

On March 17, 2012, MCS again entered plaintiff's house, "disrupted her belongings" and changed the lock on the back door. (*Id.* ¶ 28.)

On March 19, 2012, plaintiff filed this suit.

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

MCS argues that the FDCPA claim plaintiff asserts against it should be dismissed because it is not a "debt collector" as defined by the statute. As relevant here, the FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests," from "[t]aking . . . any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest."

15 U.S.C. §§ 1692a(6), 1692f. Plaintiff alleges that her mortgagee, Aurora, hired MCS, which is in "the business of securing and preserving property for mortgage lenders and others in the foreclosure industry," to turn off the water to, and change the locks on, plaintiff's house, though Aurora did not have an order of possession from the state court. (*See* Compl. ¶¶ 8-30; Mem. Supp. Mot. Dismiss, Ex. 2-A, Mortgage)[1]; *see also* 735 Ill Comp. Stat. 5/15-1701 (stating that, absent a court order, the mortgagor is entitled to possession of property until the judgment of foreclosure is entered).

Despite the apparent sufficiency of these allegations, MCS contends that they fall short, citing *Corbett v. Beneficial Ohio, Inc.*, No. 3:11-cv-339, 2012 WL 871226 (S.D. Ohio Mar. 14, 2012) and *Allen v. Chase Home Financial, LLC*, No. 10 C 8270, 2011 WL 3882814 (N.D. Ill. Sept. 2, 2011), as support. MCS' reliance on these cases is misplaced. The defendant in *Corbett* was a mortgage company, not a property preservation company like MCS, and the court held that it was not a § 1692f debt collector because enforcing security interests was not its "principal purpose." 2012 WL 871226, at *10. The defendant in *Allen* was a property preservation company like MCS, but it was accused of violating § 1692e not § 1692f, and held not to meet the definition of "debt collector" that applies to § 1692e claims. 2011 WL 3882814 at *2-3; *see* 15 U.S.C. § 1692(a)(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts . . . owed . . . to . . . another. . . . For the purpose of section 1692f(6) of this title, such term also includes any

---

[1] The Court can consider the mortgage without converting this motion into one for summary judgment. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim.").

person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."). Given these distinctions, *Corbett* and *Allen* have no application to this case.

In short, the Court holds that plaintiff has adequately pleaded that MCS is a debt collector for the purpose of § 1692f. Defendants' motion to dismiss the FDCPA claim is, therefore, denied.

In Count II, plaintiff alleges that defendants are liable for trespass. "To sustain a cause of action for trespass to real property, a plaintiff must allege a wrongful interference with his actual possessory rights in the property." *Loftus v. Mingo*, 511 N.E.2d 203, 210 (Ill. App. Ct. 1987). Defendants contend that this claim must be dismissed because the mortgage gives Aurora permission to take "reasonable or appropriate" action to protect its interest in plaintiff's property, including "entering the Property to . . . change locks, . . . and . . . have utilities turned on or off," upon plaintiff's default. (Def.'s Mem. Supp. Mot. Dismiss, Ex. 2-A, Mortgage at 7-8.) However, given plaintiff's allegations that her property was well-maintained and secured, had functioning utilities and was clearly occupied when defendants entered it, whether their alleged actions were reasonable, is a fact issue that cannot be determined on a motion to dismiss. *See Matthews v. Homecoming Fin. Network*, No. 03 C 3115, 2005 WL 2387688, at *8 (N.D. Ill. Sept. 26, 2005) (allegations that defendant forcibly entered plaintiff's property without consent and changed the locks held sufficient to defeat motion to dismiss trespass claim).

Defendants also contend that the Count VI claim for intentional infliction of emotional distress ("IIED") is infirm. To state a viable IIED claim, plaintiff must allege that defendants' conduct was extreme and outrageous, defendants intended to inflict severe emotional distress on plaintiff or knew there was a high probability that their conduct would do so and plaintiff suffered

severe emotional distress as a result. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Plaintiff's allegations that defendants twice locked her out of her house, turned off the water and water heater, took her jewelry, electronics and other personal property and refused her repeated requests to remedy the situation, though they knew she was living in the house and had not obtained an order of possession, are sufficient to state a viable IIED claim.

In Count VII, plaintiff alleges that defendants violated the Illinois Consumer Fraud Act ("ICFA"), which prohibits, among other things, the use of unfair practices in connection with trade or commerce.[2] 815 Ill. Comp. Stat. 505/2. A practice is unfair within the meaning of ICFA, if it "offends public policy," is "immoral, unethical, oppressive, or unscrupulous" or "causes substantial injury to consumers." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (quotation omitted). Plaintiffs' allegations that defendants locked her out of her house and took her property without a legal or factual basis for doing so adequately state an ICFA claim. *See Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 755-57 (N.D. Ill. 2011) (allegations that defendants broke into and padlocked plaintiff's home "dispossessing him of his property, without notice or court approval" were sufficient to withstand motion to dismiss ICFA claim).

---

[2] Because plaintiff claims defendant engaged in an unfair practice, not a deceptive one, Rule 9(b) does not apply. *See Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 779 (N.D. Ill. 2008).

## Conclusion

For the reasons set forth above, the Court denies defendants' motion to dismiss [40].

**SO ORDERED.**                                          **ENTER: August 8, 2012**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**